UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

GERALD HANIFEN, *et al.,*                    Case No. 1:98-cv-972

      Plaintiffs,                              Black, M.J.

vs.

BALL CORPORATION, *et al.,*

      Defendants.

**MEMORANDUM OPINION AND ORDER**

This case is brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* The parties have consented to entry of final judgment by the United States Magistrate Judge. 28 U.S.C. § 636(c).

**I.     PROCEDURAL HISTORY**

Plaintiffs, Gerald Hanifen ("Hanifen") and Local 729, International Union of Electric, Salaried, Machine and Furniture Workers, AFL-CIO ("IUE Local 729" or "the union") (collectively "plaintiffs"), initiated this action by filing a complaint against four defendants, the Ball Corporation ("Ball"), Ball Metal Food Container Corporation ("Ball Metal"), Ball Corporation Consolidated Hourly Pension Plan ("Ball Plan"), and Ball Corporation Employee Benefits Administration Committee ("EBAC"). (Doc. 1).

Plaintiffs alleged four grounds for relief: (1) the wrongful denial of pension and retirement benefits; (2) unlawful interference with their rights in violation of § 510 of ERISA; (3) breach of fiduciary obligations; and (4) breach of contract under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185.  Plaintiffs sought appointment as representatives of a class of 63 former employees of the Milton Can Company.  (*See* doc. 1).

On June 22, 2001, the Court certified this matter as a class action.  (Doc. 32).  In certifying the class, the Court adopted the parties' stipulated class definitions, as follows:

**Rule of 75 Class**

All 63 members of IUE Local 729 who filed claims for early retirement pension benefits under the "Rule of 75" provision of Plan Supplement #4e to the Ball Corporation Consolidated Hourly Pension Plan and who were denied such pension benefits by letter dated March 16, 1998.  These individuals are set forth in attached Exhibit 1 [of Doc. 31].

**ERISA 510 Class**

Those members of the above "Rule of 75" who did not meet all of the eligibility requirements for "30 Year Early Retirement" under Plan Supplement #4e to the Ball Corporation Consolidated Hourly Pension Plan, but who would have met all of the eligibility requirements for "30 Year Early Retirement" under Plan Supplement #4e to the Ball Corporation Consolidated Hourly Pension Plan had the opportunity to be credited with vesting and benefits service under the Plan been extended through December 31, 1998.

(Doc. 31; *see* doc. 32).

On October 30, 2003, plaintiffs filed a "Motion to Reverse the Decision of the Employee Benefits Administration Committee."  (Doc. 90).

-2-

On September 30, 2004, the Court issued a memorandum opinion and order granting plaintiffs' motion in part and denying the motion in part. (Doc. 96). The motion was denied with respect to plaintiffs' claim that the decision to deny "Rule of 75" early retirement benefits was arbitrary and capricious. (*Id.*) The motion was granted with respect to plaintiffs' claims that they were denied a full and fair review of their claims for 30 year early retirement benefits in violation of § 503 of ERISA, 29 U.S.C. § 1133; and that the decision to deny plaintiffs' applications for 30 year early retirement benefits was arbitrary and capricious. (Doc. 96).

On December 16, 2004, defendants filed a motion for summary judgment with respect to plaintiffs' claims under § 510 of ERISA and § 301 of the LMRA. (Doc. 100). The parties agree that these are the only issues that remain. (*See* doc. 100 at 3). Plaintiffs have filed a memorandum in opposition to the motion, and defendants have filed a reply. (Docs. 102, 105). The Court held oral argument on May 24, 2005. The matter is now ripe for review.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the

outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied,* 451 U.S. 914  (1981)).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 249. The inquiry is whether the evidence presents a sufficient disagreement over the facts to require submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52.

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.

-4-

1989), *cert. denied*, 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson*, 477 U.S. at 250; *Guarino*, 980 F.2d at 404-05.

### III.    MATERIAL FACTS

Hanifen, as was typical of other members of the class, was originally employed by the Heekin Can Company ("Heekin") at a production plant in Cincinnati, Ohio ("the Cincinnati plant"). (*See* Hanifen dep. at 49). Hanifen and other class members worked under a collective bargaining agreement between IUE Local 729 and Heekin which promised certain benefits to long service employees (the "Heekin Plan"). (Hanifen dep. 49-52; def. ex. 4). Hanifen served as IUE Local 729 Chief Steward at Heekin. (Hanifen dep. at 31; def. ex. 11).

In 1993, Ball Corporation acquired Heekin. (Hanifen dep. at 80-82). At the time of the acquisition, the Heekin Plan was merged with the Ball Corporation Consolidated Hourly Pension Plan ("the Plan"). (Def. ex. 6). At the time of the merger of the two plans, the Heekin Plan was underfunded in that its liabilities exceeded its assets. (*See* Poling dep. at 74-75; pl. ex. 139.)

In 1994, IUE Local 729 entered into a new collective bargaining agreement ("CBA") with Ball. (Def. ex. 4). Section 18 of the CBA provided that pension benefits under a non-contributing plan would be controlled by a separate "Pension Agreement."

(*Id.* at 54). The applicable "Pension Agreement" is the Ball Corporation Consolidated Hourly Pension Plan Supplement #4e ("plan supplement"). (*See* doc. 96 at 16; def. exs. 5, 8). Section 9.1 of the Plan reserves to the Ball Corporation Employee Benefits Administration Committee ("EBAC") the right to amend the Plan. (Def. ex. 5 at 40).

In 1996, Ball determined that the financial performance of Ball Metal was unsatisfactory. (*See* Hoover dep. at 103). Ball sought a buyer who would keep the Cincinnati Plant open and employ its workforce. (*Id.* at 103-05). On October 28, 1996, Ball sold all of the assets of Ball Metal to Milton Can Company ("Milton"). (Def. ex. 12). The Cincinnati Plant, including all plant machinery and equipment, was sold as a "going concern," and all employees who had worked for Ball continued to work for Milton. (*Id.*)

Under the terms of the Asset Purchase Agreement, the CBA, including the pension agreement, would and did remain in effect. As a result, the terms and conditions of plaintiffs' employment were unchanged on the date of the sale. (Hanifen dep. at 104-108; def. ex. 12).

Moreover, Milton and Ball agreed that the IUE plaintiffs would continue to accrue vesting and benefit service under the Plan until September 30, 1997, five months beyond the expiration of the CBA. (Def. ex. 12). Ball was not obligated to grant plaintiffs any continued accrual of service in the Ball Plan beyond the date Ball owned the Cincinnati plant. (Hanifen dep. 158-59). The accommodation to the now-plaintiffs was made at Milton's request, so that it would have an ample opportunity to negotiate a defined

contribution plan to replace the Ball Plan. (Westerlund dep. at 71-73).

Ball also agreed to extend the vesting periods for members of two other unions, the International Association of Machinists and Aerospace Workers ("IAM") and the United Steelworkers of America ("Steelworkers"). (*Id.* at 7-73)

The vesting period for members of the IAM was extended until September 30, 1998, five months after the expiration of the Ball-IAM collective bargaining agreement. (Def. ex. 12). This extension of five months beyond the expiration of the collective bargaining agreement was the same length of extension (*i.e.*, five months from the expiration of the CBA) as the one extended to the IUE plaintiffs.

The vesting period for members of the Steelworkers was extended through December 31, 1998. (*Id.*) The Steelworkers' collective bargaining agreement was recently negotiated, and Milton expected to negotiate a replacement pension plan with them before the expiration of their collective bargaining agreement. (*Id.*)

Ultimately, after the Ball CBA expired on April 30, 1997, IUE Local 729 negotiated a new collective bargaining agreement with Milton. Milton and the union agreed to a new, defined contribution pension plan that would be maintained by the IUE, effective October 1, 1997. (Hanifen, dep. at 255-60, 373-74; def. ex. 23).

## IV.   ANALYSIS

A.    *Interference with rights in violation of § 510 of ERISA*

Section 510 of ERISA provides in pertinent part as follows:

It shall be unlawful for any person to discharge, fine, suspend, expel,

discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan.

29 U.S.C. § 1140.

The burden-shifting analytical framework first set forth in *McDonnell-Douglas Corp v. Green,* 411 U.S. 792 (1973), applies to claims brought under § 510. *See Humphreys v. Bellaire Corp.,* 996 F.2d 1037, 1043 (6th Cir. 1992).

To make out a *prima facie* case under this section, a plaintiff must show: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which an employee may be entitled. *Smith v. Ameritech,* 129 F.3d 857, 865 (6th Cir. 1997); *see also Gavalik v. Continental Can Company,* 812 F.2d 834, 852 (3d Cir. 1987). In a class action context, it is not enough for the class representative to prove the validity only of his or her own claim. *Gavalik,* 812 F.2d at 852 (citations omitted). Rather, the class representative "must establish that discrimination was the employer's standard practice." *Id.*

An employer can refute a *prima facie* case by introducing "evidence of a legitimate, nondiscriminatory reason for its challenged action." *Smith,* 129 F.3d at 865. "This shifts the burden back to the plaintiff to show that the employer's proffered reason was mere pretext. Although the plaintiff need not show that the employer's sole purpose ... was to interfere with plaintiff's entitlement to benefits, he must either prove that the interference was a motivating factor in the employer's actions or prove that employer's

-8-

proffered reason is unworthy of credence. Summary judgment is appropriate if plaintiff fails to establish a *prima facie* case or fails to rebut the employer's proffer of a legitimate, nondiscriminatory reason for its actions." *Id.*

The plaintiff must show that the employer had a specific intent to violate ERISA. *Id.*; *see also Schweitzer v. Teamsters Local 100,*___ F.3d ___, ___, 2005 WL 1431417, at *5  (6th Cir. June 21, 2005) (No. 04-3220).

> Indeed, "[t]he mere fact that [an employee's] termination would save [the employer] money in pension costs ... is not sufficient to prove the requisite intent" in making a prima facie case under § 510. *Johnson v. Square D. Co.,* 1992 U.S.App. LEXIS 27171, at *5 (6th Cir. Oct. 15, 1992) (citing *Conkright v. Westinghouse,* 933 F.2d 231, 239 (4th Cir.1991) ("[I]t is not sufficient for an employee to allege lost opportunity to accrue additional benefits as evidence of the employer's specific intent to violate ERISA.")). *see also Clark v. Coats & Clark, Inc.,* 990 F.2d 1217, 1224 (11th Cir. 1993) ("[M]easures designed to reduce costs in general that also result in an incidental reduction in benefit expenses do not suggest discriminatory intent."); *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) ("Section 510 protects employees from conduct designed to deprive them of rights created under employee benefit plans; it does not cast liability on an employer for" making nondiscriminatory business decisions.); *cf. May v. Shuttle, Inc.,* 129 F.3d 165, 171 (D.C. Cir. 1998) ("[T]he undisputed evidence shows that [Defendant] furloughed plaintiff[ ] in order to cut costs ... Plaintiff[ ] ha[s] presented no evidence to show that [Defendant] was motivated by any other factor. Because plaintiff[ ] cannot show a specific intent to discriminate, [he] ha[s] failed to establish a prima facie case.")

*Id.*

Here, the defendants are entitled to judgment as a matter of law with respect to the § 510 claims because plaintiffs have not met their burden of showing by "significant probative evidence," *see Harris*, 873 F.2d at 931, that defendants engaged in any

prohibited conduct taken for the purpose of interfering with their attainment of any right to which they may be entitled. *See Smith,* 129 F.3d at 865.

      *1.      Cutting Off Plaintiffs' Vesting Opportunities*

Plaintiffs argue first that defendants discriminated against them in violation of § 510 by failing to allow them to accrue vesting and benefits service through December 31, 1998, the cut-off date for members of the Steelworkers union.

While it is undisputed that the sale to Milton cut short the opportunities of certain employees to continue to accrue vesting service for pension eligibility purposes under the Ball Plan, this reality does not alone rise to a violation of § 510 of ERISA. Moreover, proximity to vesting, even with a showing of cost savings, is not sufficient to entitle plaintiffs to a trial. *See Humphreys v. Bellaire Corp.,* 966 F.2d 1037, 1043 (6th Cir. 1992).

Nonetheless, the Sixth Circuit has in some cases allowed a plaintiff to make out a *prima facie* case of ERISA discrimination by showing a close temporal proximity between the employer's action and an important milestone in the vesting of the employee's pension benefits. *See, e.g., Humphreys,* 966 F.2d at 1043-44 (6th Cir. 1992) (holding that the plaintiff had made out a "bare minimum," circumstantial *prima facie* case by showing that his employer discharged him within two months of his pension vesting date). Here, however, plaintiffs cannot evidence a close temporal proximity between the employer's action and the plaintiffs' vestings.

Here, the employer's action complained of is the sale of Ball Metal to Milton,

-10-

which occurred on October 28, 1996, which sale provided for the vesting of benefits under the Ball Plan through September 30, 1997.  In their complaint, however, the members of the ERISA 510 Class allege only that they would have met eligibility requirements for "30 year Early Retirement" under the Ball Plan if they had been allowed to accrue vesting and benefits service through December 31, 1998.  (Doc. 1, ¶ 23).  Here, then, the fifteen month period between the employer's action and the plaintiffs' alleged potential vestings does not constitute the requisite "close temporal proximity."

Moreover, plaintiffs cannot show that the decision to create an extended vesting period for IUE members that ended before the extended periods created for members of the other two unions was the result of intentional discrimination in violation of § 510. Defendants have provided a legitimate nondiscriminatory explanation for extending the vesting periods as they did.

As previously noted, the vesting period for members of the IAM was extended until September 30, 1998, five months after the expiration of the Ball-IAM collective bargaining agreement.  (Def. ex. 12).  This extension of five months beyond the expiration of the collective bargaining agreement was the same length of extension (*i.e.*, five months from the expiration of the CBA) as the one extended to the IUE plaintiffs.

The vesting period for members of the Steelworkers was extended through December 31, 1998.  (*Id.*)  The Steelworkers' collective bargaining agreement was recently negotiated, and Milton expected to negotiate a replacement pension plan with them before the expiration of their collective bargaining agreement.  (*Id.*)  Thus, there

-11-

was no need to extend the vesting period for as long a period as with the two other unions.

The collective bargaining agreement between Ball and the IUE was set to expire in April 1997, six months after the sale to Milton.  Milton also hoped to negotiate a new agreement with the IUE that would provide for a defined contributions plan to replace the Ball Plan, a defined benefits plan.  Extending the vesting period five months beyond the expiration date was calculated to allow time for Milton and the IUE to negotiate a new agreement, without prejudice to the rights of the plan participants under circumstances similar to those with the other unions.  Rather than "interfering" with the rights of the IUE members, the extension gratuitously increased eligibility for certain IUE members beyond the expiration of the CBA.

Thus, even if this Court were to find that plaintiffs made a *prima facie* showing of discrimination under § 510, their claims fail upon summary judgment because they have not provided any evidence to show that defendants' explanations for their actions were pretextual.

2.   *Retention of Heekin Plan Assets*

Plaintiffs also claim that defendants interfered with their rights in violation of § 510 by retaining the assets of the former Heekin Plan after the sale of the Heekin Plant to Milton.  Their claim lacks merit.

Under certain limited circumstances, ERISA requires plan fiduciaries to distribute the assets of a plan to participants and beneficiaries.  These circumstances include the

termination or partial termination of a plan and the merger or consolidation of one plan

with another.  *See* 29 U.S.C. §§ 1058, 1344; s*ee also Mead Corp v. Tilley,* 490 U.S. 714

(1989); *Brillinger v. General Electric Co.,* 130 F.3d 61 (2d Cir. 1997), *cert. denied,* 525

U.S. 1138 (1999); *Malia v. General Electric Co.,* 23 F.3d 828 (3d Cir.), *cert. denied,* 513

U.S. 959 (1994).

Circumstances that would require a distribution of plan assets are not present here.

Section 1058 provides in pertinent part as follows:

A pension plan may not merge or consolidate with, or transfer its assets or
liabilities to any other plan ... unless each participant in the plan would (if
the plan then terminated) receive a benefit immediately after the merger,
consolidation or transfer which is equal to or greater than the benefit he
would have been entitled to receive immediately before the merger,
consolidation or transfer.

29 U.S.C. § 1058.  "Under this provision, a merger may not cause reduction of the benefit

below would it would be upon a hypothetical termination of the plan."  *Brillinger,*130

F.3d at 62.

Section 1344 provides that  "[i]n the case of the termination of a single-employer

plan, the plan administrator shall allocate the assets of the plan (available to provide

benefits) among the participants and beneficiaries of the plan."  29 U.S.C. § 1344(a).

The language of § 1058 must be read together with § 1344 to understand the

"benefits" that would be payable at the time of the hypothetical termination.  *Malia,* 23

F.3d at 831.  "Benefits" under § 1058 have consistently been held to refer only to accrued

benefits.  *See id.* at 832.  "Benefits" under § 1344 refers only to the allocation of benefits

-13-

provided by the terms of the benefit plan and does not confer a right upon plan participants to recover unaccrued benefits. *See Mead Corp v. Tilley,* 490 U.S. 714, 722-23 (1989).

Plaintiffs have not presented any evidence that each participant in the Heekin Plan (if the plan then terminated) would not have been entitled to receive, immediately after the transfer of Heekin Plan assets to Ball, a benefit which was equal to or greater than the benefit he would have been entitled to receive immediately before the transfer. Thus, a distribution under § 1058 is not warranted.

Plaintiffs are not entitled to a distribution under § 1344. First, there is no evidence that the Ball Plan has terminated. Additionally, undisputed facts show that the Ball Plan is a "defined benefits" plan, as distinguished form "defined contributions" plan. (*See* def. ex. 6). Participants in a "defined benefits" plan are not entitled to share in the distribution of assets in excess of their accrued benefits. *See Brillinger,* 130 F.3d at 64.

Whether the Heekin Plan was under-funded or whether there were excess assets, as the parties dispute, are not genuine issues of material fact. There is simply no evidence that any circumstances exist in the present case to require distribution of Heekin Plan assets to plaintiffs upon the sale of the Cincinnati plant to Milton.

B.     *Breach of contract under § 301 of the LMRA*

Section 301 provides that suits for the violation of contracts between an employer and a labor organization may be brought in any district court of the United States. *See* 29 U.S.C. § 301(a). This section has been found to create substantive as well as

-14-

jurisdictional rights.  *See United Elec., Radio & Mach. Workers of America v. Oliver Corp.,* 205 F.2d 376, 384-85 (8th Cir. 1953).

While governing suits by and against labor unions, § 301 also permits suits by union members seeking to vindicate uniquely personal rights.  *See Province v. Cleveland Press Pub. Co.,* 571 F. Supp. 855, 860 (N.D. Ohio 1983).  Such rights, however, must arise out of the collective bargaining agreement.  *Id.*  Moreover, persons represented by a union which is covered by a collective bargaining agreement must exhaust union remedies before filing suit under the LMRA.  *Merk v. Jewell Cos.,* 848 F.2d 761, 766 (7th Cir. 1988), *cert. denied,* 488 U.S. 956 (1988).

Defendants seek summary judgment on plaintiffs' claims under the LMRA on two grounds.  First, defendants argue that plaintiffs have not identified any provision of the CBA that is the subject of the alleged breach of contract.  Second, defendants contend that plaintiffs did not file a grievance with respect to pension benefits prior to the expiration of the CBA and, therefore, failed to exhaust their union remedies.

The Court need not decide the parties' dispute over whether the grievance procedures were exhausted.  The dispositive issue is whether defendants breached the CBA.

Plaintiffs allege that defendants breached their contract with the plaintiffs (*i.e.*, the CBA) by:  (1) not negotiating with them the terms and effects of the sale to Milton prior to the sale; and (2) by not negotiating with them with respect to the five-month extension of the vesting period following expiration of the CBA.  Neither claim is viable as a breach

-15-

of contract.

Defendants were not required by the CBA to negotiate the terms or effects of the sale because there was no successor clause in the CBA.  (*See* def. ex. 4; pl. ex. 163).

Moreover, Ball's unilateral decision to extend the vesting period did not result in a violation § 301 of the LMRA as the continuation of any terms of an agreement beyond its expiration does not create a new collective bargaining agreement, by express choice or implication.  *See National Ass'n of Broad. Employees & Technicians, AFL-CIO CLC v. RKO General, Inc.,* No. 94 Civ. 3889 (JFK), 1986 WL 181, at * 2 (S.D.N.Y.  April l4, 1986).

Further, although a unilateral change in the terms or conditions of employment may be a violation of the duty to bargain in good faith created by sections 8 of the National Labor Relations Act, 29 U.S.C. § 158, that is a matter over which the National Labor Relations Board, or NLRB, has exclusive jurisdiction.  *See International Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Aerospace Div., UOP, Inc.,* 580 F. Supp. 641, 643 (D. Conn. 1984) (citing *NLRB v. Allied Prods. Wheel Corp.,* 548 F.2d 644 (6th Cir. 1977)); *see also Martin v. Lake County Sewer Co.,* 269 F.3d 673, 680 (6th Cir. 2001).

Accordingly, defendants are entitled to summary judgment with respect to plaintiffs' claims of a breach in violation of § 301 of the LMRA.

## V.     CONCLUSION

There being no genuine issue as to any material fact, defendants are entitled to judgment in their favor as a matter of law on plaintiffs' claims that defendants interfered

-16-

with their rights in violation of § 510 of ERISA, that defendants improperly withheld excess plan assets, and that defendants breached the collective bargaining agreement in violation of § 301 of the LMRA.

## IT IS THEREFORE ORDERED THAT:

Defendants' motion for summary judgment  (doc. 100) is **GRANTED**.  As there are no other matters remaining for this Court's review, **IT IS FURTHER ORDERED THAT** this case is **CLOSED.**

**IT IS SO ORDERED.**

Date:    7/21/05          s/Timothy S. Black
                                         Timothy S. Black
                                         United States Magistrate Judge.